IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| MASTER MICHAEL RAMSEY, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| | : | |
| VS. | : | **28 U.S.C. § 2255 Case No.** |
| | : | 4 : 11-CV-90115 (CDL) |
| | : | |
| UNITED STATES OF AMERICA, | : | **Criminal Case No.** |
| | : | 4 : 07-CR-58 (CDL) |
| | : | |
| | : | |
| Respondent. | : | |

## RECOMMENDATION

Petitioner's Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255, filed on October 11, 2011 (Doc. 169), is before this Court for the issuance of a recommendation of disposition pursuant to Rule 8 of the Rules Governing Section 2255 Proceedings for the United States District Courts.[1]

### Procedural History

By means of a superseding indictment dated January 13, 2009, the Petitioner was indicted in this Court on charges of felony murder, kidnaping, murder with a firearm during a crime of violence, robbery, motor vehicle theft, and conspiracy to commit robbery. (Doc. 77). Following a jury trial, the Petitioner was found guilty on all charges. (Doc. 108). Petitioner was sentenced to concurrent life imprisonment terms on the felony murder and kidnaping convictions, forty (40)

---

[1] The Petitioner filed an amended § 2255 Motion on October 17, 2011 (Doc. 170), in which he adds previously omitted pages of information regarding certain claims. The Court will refer to the original and amended § 2255 motions to vacate as the "§ 2255 motion".

years concurrent on the robbery, motor vehicle theft, and conspiracy convictions, and twenty-five (25) years consecutive on the murder with a firearm during a crime of violence conviction. (Doc. 117). On July 30, 2009, the Petitioner filed a Notice of Appeal (Doc. 128), raising as error the district court's denial of his motion to suppress evidence seized from his vehicle. The Eleventh Circuit Court of Appeals affirmed the Petitioner's convictions in an Order filed April 28, 2010. (Doc. 150-1). Petitioner's petition for writ of certiorari to the United States Supreme Court was denied on October 4, 2010. (Doc. 154).

In his ▪ 2255 motion, Petitioner alleges that he received ineffective assistance of counsel at trial. (Docs. 169, 170). The Court appointed counsel to represent Petitioner on the ▪ 2255 motion and held an evidentiary hearing on the motion on June 19, 2013. (Doc. 224). Both parties have filed briefs in support of their positions. (Docs. 227, 228). In his ▪ 2255 motion, as outlined by the Court in an Order dated March 8, 2012 (Doc. 183), Petitioner raises allegations of ineffective assistance of counsel at trial, asserting that counsel Thomas Moffett Flournoy, Jr. provided ineffective assistance of counsel in his:

1. Failure to pursue and/or convey a plea agreement

2. Failure to investigate and have the Petitioner mentally evaluated, inasmuch as Petitioner claims that he suffers from depression and PTSD

3. Failure to object to other crimes evidence, as offered by Petitioner's co-defendant Travis Livingston

4. Failure to have a writing exemplar conducted and to call experts to rebut government evidence.

5. Massiah/Henry violations

6. Giglio/Whitley violations

7.  Failure to move for a change of venue

8.  Failure to make a Rule 29 motion to acquit

9.  Failure to interview and subpoena Samuel Perry.

At the § 2255 hearing and in his Brief, the Petitioner addresses only two (2) grounds for relief, to wit, that counsel failed to interview and call as a witness at trial Samuel Juan Perry, and that counsel failed to obtain the opinion and call as a witness at trial the testimony of a forensic document examiner, or handwriting expert.

Petitioner's convictions arose from the murder and robbery of taxi cab driver Jack Horne, Jr., whose body was found on August 11, 2006 in a remote wooded area on the Fort Benning Military Reservation in Columbus, Georgia. Horne had been reported missing on August 7, 2006. Surveillance video from the apartment complex where Horne's cab was found led to the arrest and charging of the Petitioner and a co-defendant for Horne's murder, kidnapping, and burglary. A third individual, Samuel Juan Perry, was tried separately in a military tribunal. Prior to trial, the Court, by Oral Order dated February 4, 2009, denied a Motion to Suppress filed on behalf of the Petitioner, which challenged the search of his vehicle.

## Legal Standards

Section 2255 provides that:

> a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may

> move the court which imposed the sentence to vacate, set aside or correct the sentence.

> 28 U.S.C. § 2255.

If a prisoner's 2255 claim is found to be valid, the Court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.*

In order to establish that his counsel's representation was constitutionally defective, the Petitioner must show (1) that his counsel's representation was deficient, and (2) that the Petitioner was prejudiced by his counsel's alleged deficient performance. *Strickland v. Washington*, 466 U.S. 668 (1984); *Smith v. Wainwright*, 777 F.2d 609, 615 (11th Cir. 1985). "Our role in collaterally reviewing [] judicial proceedings is not to point out counsel's errors, but only to determine whether counsel's performance in a given proceeding was so beneath prevailing professional norms that the attorney was not performing as 'counsel' guaranteed by the sixth amendment." *Bertolotti v. Dugger*, 883 F.2d 1503, 1510 (11th Cir. 1989). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689. "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." *Chandler v. U.S.,*

4

218 F.3d 1305, 1316 (11th Cir. 2000).

The *Strickland* court stated that "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

> [A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice. . . . It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding . . [rather][t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law.

*Strickland*, 466 U.S. at 693-694.

In evaluating whether Petitioner has established a reasonable probability that the outcome would have been different absent counsel's alleged errors, a court "must consider the totality of the evidence before the judge or jury." *Brownlee v. Haley*, 306 F.3d 1043, 1060 (11th Cir. 2002).

"As to counsel's performance, 'the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices.'" *Reed v. Sec'y. Fla. Dep't. of Corr.*, 593 F.3d 1217, 1240 (11th Cir. 2010)(quoting *Bobby v.Van Hook*, 130 S.Ct. 13, 17 (2009)). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). In order to find that counsel's performance was objectively unreasonable, the performance must be such that

5

no competent counsel would have taken the action at issue. *Hall v. Thomas*, 611 F.3d 1259, 1290 (11th Cir. 2010).

As observed by the Eleventh Circuit, the standard for ineffective assistance of counsel

> has nothing to do with what the best lawyers would have done. Nor is it the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers= performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).

*Evidentiary Hearing*

On June 19, 2013, an evidentiary hearing was held in Albany, Georgia in this matter. (Docs. 224, 226). Thomas M. Flournoy, counsel for the Petitioner at trial, testified on behalf of the Government. (Doc. 226, pp. 71-104). Mr. Flournoy testified that he has been engaged in the practice of law in the state of Georgia, primarily in the area of criminal law, since 1970, and had handled approximately 70 murder cases over the course of his legal career. *Id.* at p. 72. Originally represented by the Federal Defenders Office by appointment of the Court, Mr. Flournoy was appointed to represent the Petitioner in the underlying case in July 2008 (Doc. 54), and represented Petitioner through the appeal of his convictions. (Doc. 226, pp. 72-73). Petitioner's appointed counsel from the Federal Defenders Office, Nicole Williams, also testified at the June 19, 2013 evidentiary hearing. *Id.* at pp. 105-109.

*Failure to interview and subpoena Samuel Juan Perry*

Petitioner contends initially that his trial counsel rendered ineffective assistance in failing to interview and subpoena witness Samuel Juan Perry. According to testimony at the § 2255 hearing and the trial record, the Petitioner, Perry, and a third individual, Travis Livingston, were all involved in the events surrounding the murder of Jack Horne, Jr., in Columbus, Georgia in August 2006. The Petitioner and Livingston were indicted in this Court, and Livingston pled guilty to one count of robbery prior to the Petitioner's trial. Perry, an active member of the military at the time of the crimes, pled guilty in a military tribunal to felony murder, robbery, kidnaping, larceny, and conspiracy, and was sentenced to sixty (60) years in prison. (Doc. 225-3, p. 19). Petitioner maintains that if his trial counsel had interviewed and subpoenaed Perry to testify at his trial, Perry would have exonerated Petitioner as to all of the underlying crimes. At the Evidentiary Hearing, the Petitioner stated that:

> I'm positive Samuel Perry would have cleared up some
> inconsistencies that he may have stated during his court-martial and
> supported my defense because it is true that I was not present
> during the commission of this crime, and Mr. Samuel Perry would
> have entered that into evidence.

Doc. 226, p. 26.

Mr. Flournoy testified that he met with the Petitioner approximately sixteen (16) times over an eight month period of representation. *Id.* at p. 73.

> **Q (by Mr. Dasher)** And did you consider the possibility of having
> Samuel Juan Perry testify as a defense witness in this case?
>
> **A (by Mr. Flournoy)** Well, I considered what Perry had already
> told the FBI, and I considered – I had a copy of his transcript from
> his court-martial proceeding where he had given sworn testimony
> as part of the providency – plea providency inquiry, and based on

7

> what he had said in his FBI statement and at his court-martial, I
> made a decision I wanted no part of Samuel Perry. I wasn't going
> to touch him with a ten foot pole.
>
> **Q**  Would that have been your decision even had Perry told you
> that he would testify that he committed the crime and Mr. Ramsey
> had nothing to do with it?
>
> **A**  That would have remained my decision because he – if he does a
> 180 degree turn like that, he's given his sworn testimony at his
> court-martial, so he's saying, Well I lied, I committed perjury, I lied
> to the FBI, but now I'm telling the truth. I would not have found
> him reliable. And, in fact, I recall talking to the FBI,  . . . and asked
> them what kind of impression do you have of Mr. Perry, and they
> said he's just an absolute loose cannon, and I wasn't looking for a
> loose cannon as a witness.
>
> . . .
>
> I would not have called him if he had told me he would testify
> favorable to Mr. Ramsey, after he had pointed a finger at Ramsey,
> made Ramsey the planner and the shooter in his FBI statement and
> in his court-martial testimony.

*Id.* at pp. 76-77, 97.

Mr. Flournoy went on to testify that Perry's FBI statement and court martial testimony, wherein Perry stated that the Petitioner shot the victim, were consistent and would have been used to impeach any contrary testimony by Perry at the Petitioner's trial. *Id.* at pp. 78-79. According to Mr. Flournoy, the Petitioner did not provide any information regarding possible exoneration by Mr. Perry.

> **Q (by Mr. Dasher)**  Did [Mr. Ramsey] tell you that Mr. Perry had
> changed his story and would exonerate him if you called him as a
> witness?
> **A (by Mr. Flournoy)**   At the time I was – No, sir, he didn't. At
> the time I was representing Mr. Ramsey he never indicated to me
> that he had any knowledge about what Perry would then – would

8

>       now be willing to say. . . Mr. Ramsey never told me that Perry
>       would testify for him.

*Id.* at p. 103.

The decision of which witness to call "is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995); *Conklin v. Schofield*, 366 F.3d 1191, 1204 (11th Cir. 2004). "Whether to present certain testimonial evidence is a matter of trial strategy, and complaints of uncalled witnesses are generally disfavored." *Sanders v. U.S.*, 314 Fed.Appx. 212, 213 (11th Cir. 2008). "[C]ounsel's failure to call particular witnesses which the defendant thinks would be helpful is generally not considered ineffective assistance of counsel . . . [but] [i]nstead this is regarded as a tactical decision. When counsel believes that a witness will not be helpful to the case, no requirement exists that counsel must call the particular witness." *Paige v. U.S.*, 2009 WL 700659 (M.D.Fla. March 16, 2009) (*citing Hardwick v. Crosby*, 320 F.3d 1127, 1161 (11th Cir. 2003)).

Petitioner has failed to establish that his attorney's decision not to call Samuel Perry as a witness rose to the level of deficient performance, or resulted in prejudice to the Petitioner such that there was a reasonable probability that without the decision the outcome of Petitioner's trial would have been different. "In order to show that an attorney's strategic choice was unreasonable, a petitioner must establish that no competent counsel would have made such a choice." *Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998). The Petitioner has failed to make such a showing in regard to counsel's decision not to call Samuel Perry as a witness.

At the time of Petitioner's trial, counsel was aware of Perry's court martial testimony

9

implicating the Petitioner in the crimes at issue and his testimony to the FBI, during which Perry had provided different accounts of events underlying the crimes.  Petitioner had not provided counsel with any information as to Perry's ability to testify in Petitioner's favor, leaving counsel to weigh the testimony of a witness that even if favorable to the Petitioner, would likely be impeached.  The Court notes that Perry stated that he intended to kill the Petitioner when he saw him just a year prior to the evidentiary hearing in 2013, thus making him an improbable defense witness at the time of Petitioner's trial in 2009.  (Doc. 226, pp. 42, 47).  Counsel's decision not to call Perry as a witness was not an uninformed decision, in that counsel was aware of Perry's existence and his past testimony, which led counsel to choose not to call Perry as a witness for the Petitioner.  This was not a case wherein counsel was unaware of the witness's existence or the possible substance of his testimony.  *Cf. Code v. Montgomery*, 799 F.2d 1481 (11th Cir. 1986) (counsel failed to adequately investigate regarding existence of alibi witness).

Petitioner's counsel relies on various cases from other circuits to support his position that Mr. Flournoy rendered ineffective assistance by failing to interview Samuel Perry.  *See Sullivan v. Fairman,* 819 F.2d 1382 (7th Cir. 1987); *Soffar v. Dretke*, 368 F.3d 441 (5th Cir. 2004); *Anderson v. Johnson*, 338 F.3d 382 (5th Cir. 2003).   However, these cases are distinguishable from the case at bar in that counsel in the cases to which Petitioner points did not have knowledge of or access to the actual or purported testimony of witnesses that they failed to interview.  Herein, Mr. Flournoy had Perry's sworn testimony from Perry's court martial proceeding, as well as Perry's statements to the FBI, implicating the Petitioner.

Underlying all of Petitioner's ineffective assistance of counsel claims under consideration herein is the assertion that counsel failed to adequately prepare for and investigate the case.

10

However, "counsel need not always investigate before pursuing or not pursuing a line of defense." *Chandler,* 218 F.3d at 1318; *see also Rogers v. Zant*, 13 F.3d 384, 387 (11th Cir. 1994) ("By its nature, 'strategy' can include a decision not to investigate . . . [and] a lawyer can make a reasonable decision that no matter what an investigation might produce, he wants to steer clear of a certain course."). "As we have recognized, *Strickland's* approach toward investigation reflects the reality that lawyers do not enjoy the benefit of endless time, energy or financial resources." *Chandler*, 218 F.3d at n. 22 (*internal citations omitted*).

### *Failure to have writing exemplar conducted*

In the second ground for relief argued at the Evidentiary Hearing and in Petitioner's brief, Petitioner challenges his trial counsel's failure to procure expert analysis of the signature on the Columbus Police Department Advice of Rights Form, a signature which the Petitioner claims is not his. Present counsel for Petitioner obtained a review of this signature by a forensic document examiner, who concluded that "[i]n my professional opinion, no conclusion can be reached as to whether Mr. Ramsey wrote the questioned signature", noting that "[t]he questioned signature is highly abbreviated and provides few features for handwriting comparison purposes." (Doc. 225-6, p. 3). The examiner found that "[t]he known signatures display considerable variation" and he was "unable to reach a conclusion because the few similarities present between the questioned signature and the known signature samples are insufficient to form the basis for an opinion of authorship. Further, . . . I am unable to eliminate Mr. Ramsey as the writer of the questioned signature". *Id.* at pp. 4, 5.

In regard to his decision not to submit the waiver form signature for analysis by a handwriting expert, Mr. Flournoy was asked

**Q (by Mr. Dasher)** And one of the allegations in Mr. Ramsey's petition is that you should have had that document examined, the waiver, as to the genuineness of that signature. In other words, have it submitted to a handwriting expert. Did you consider doing that?

**A (by Mr. Flournoy)** Well, I did consider it.

**Q** And could you tell us why you decided not to submit it to a handwriting expert?

**A** Well, yeah. I had a copy of his military records, and I went through those, and there were a number of documents in his military records that he had signed, and his signatures were not always consistent. He'd sign different ways at different times. Some signatures would look like the signatures on the court – on the documents that he said were not his signature. I couldn't tell. And I got worried about it and I got concerned, and at the end of the day, I was afraid if I had a handwriting analysis – I'd have to apply to get the funds and have it done. Had a handwriting expert examine the documents, I was afraid he might come back and say, yes, this is Mr. Ramsey's signature. Basically, I was concerned about growing the snowball, giving the government another bullet to use against us, so I elected not to do that.

Instead I was going to, and I believe I did during the course of the trial, ask I believe it was one of the police investigators if they had any handwriting analysis done and if not, why not. Y'all could have done that, but you didn't. And just trying to raise some reasonable doubt areas for the jury.

But anyway I was afraid, I decided not to do it.
. . .

So I was trying to preserve an argument that they could have recorded it.

**Q** So did that factor into your decision on whether or not to obtain a handwriting expert?

**A** Well, it did because I wanted to – I knew they had not recorded either audio or video, and I wanted to preserve that argument. I wanted to make it, to the extent I could, a swearing contest, and I

12

> was afraid if I sent – if I got a handwriting analysis and it came back
> and said the handwriting was Mr. Ramsey's that was going to pull
> the rug out from under us on that argument.

*Id.* at pp. 74-76.

Petitioner has failed to establish that counsel's representation in regard to the handwriting analysis fell below an objective standard of reasonableness or that his decisions resulted in prejudice to the Petitioner. Although Petitioner asserts that trial counsel erroneously assumed that results of handwriting analysis would have to be turned over to government counsel, trial counsel's testimony does not reveal that trial counsel relied solely upon such a specific consideration. Rather, trial counsel testified that he had reviewed exemplars of his client's different signatures so that he was uncertain as to the results of any analysis, and trial counsel had an overall strategy that conflicted with his pursuit of any handwriting analysis. Specifically, trial counsel wanted to create doubt in the jury's mind by pointing out that the government had not had a handwriting analysis done, and that the government had failed to record the interview. He thought this a better strategy than running the risk of an unfavorable handwriting analysis that could jeopardize his ability to make these arguments.

In order to establish deficient performance of counsel, the performance must be such that no competent counsel would have taken, or would have failed to take, the action at issue. *Hall*, 611 F.3d at 1290. Moreover, Petitioner must overcome the presumption that counsel's performance was constitutionally adequate. To do so, "a petitioner must not present evidence merely to refute the presumption. Rather, the petitioner must present evidence that outweighs the presumed evidence of competence. . . . "where the record is incomplete or unclear about

13

[counsel=s] actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment.@ *Harvey v. Warden, Union Correctional Institution*, 629 F.3d 1228, 1239 (11th Cir. 2011) (quoting *Chandler*, 218 F.3d at 1314, n.15).

A review of the totality of the evidence and testimony presented at trial and before this Court reveals that Petitioner has not shown he was prejudiced by his attorney's failure to have his waiver form signature analyzed by a handwriting expert. When a handwriting expert was employed, no conclusion could be reached as to whether the waiver form signature belonged to the Petitioner, and accordingly provides no basis for reasonably concluding that earlier use of such an expert would have brought a different result to the criminal proceedings against the Petitioner. Thus, no prejudice resulted from Flournoy's failure to have Petitioner's waiver form signature analyzed.

Also, Petitioner has failed to present any evidence that trial counsel's representation rose to the level of constitutionally deficient performance. The record reflects that Flournoy's decisions Af[ell] within the wide range of professional assistance . . . [and that] the challenged action might be considered sound trial strategy.@ *Strickland*, 466 U.S. at 689. ATo state the obvious: the [] lawyers, in every case, could have done something more or something different. So omissions are inevitable.... [T]he issue is not what is possible or >what is prudent or appropriate, but only what is constitutionally compelled.@*Chandler*, 218 F.3d at1313 (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

*Remaining grounds*

"In a section 2255 motion, a petitioner has the burden of sustaining his contentions by a

14

preponderance of the evidence." *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980). The Petitioner bears the burden of persuasion to prove that counsel's performance was deficient under an objective inquiry. *United States v. Cronic,* 466 U.S. 648, 658 (1984). Although the Petitioner asserts that he has not abandoned his remaining grounds for relief, he has not provided any support for his contentions, and has fallen far short of establishing his contentions by a preponderance of the evidence. The limited discussion of certain of the remaining grounds at the evidentiary hearing provides no support for the viability of these grounds. (Doc. 226, pp. 80-85, 108-109). The Court finds that these grounds will not support the granting of § 2255 relief.

## Conclusion

The Petitioner has failed to establish ineffective assistance of counsel at trial under the *Strickland* standard. WHEREFORE, it is recommended that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Docs. 169, 170) be **DENIED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this Recommendation with the Honorable Clay D. Land, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). Therefore, it is recommended that the Court deny a certificate of appealability in its final Order. If the Petitioner files an objection to this Recommendation, he may include therein any arguments he wishes to

make regarding a certificate of appealability.

**SO RECOMMENDED**, this 31st day of October, 2013.

s/   ***THOMAS Q. LANGSTAFF***

UNITED STATES MAGISTRATE JUDGE